# Exhibit 1

02/03/2013

## TO THE HONOR OF ISTANBUL 12th FAMILY COURT

### Case Number: 2011/869 E

**Petitioner**
**Defendant – Counter claimer**   :Cem Ekmekçi

**Prosecutors**                              :Attorney Dr. Nevzat Özdemir

**Opposing party**
**Plaintiff – Counter defendant**   :Şebnem Ekmekçi

**Prosecutor**                              : Attorney Şennur Pars

**Subject Matter**                       : About the questions for which we request a reply from our witness Melis Eda Ekmekçi, whose name has been specified in the list of evidence and who will be heard from the USA, where she currently resides. The new address of our witness has been stated below.

**Explanations**                          :The questions for which we request a reply from the witness are stated below

1) In what ways does she know the parties?

2) Did Şebnem Ekmekçi take care of her after she got married with her father, did she treat her like her mother, did she envy her, after she returned from abroad where she was studying did she see and take care of her, how does Şebnem Ekmekçi treat her brother Mert?

3) How is the relationship between Şebnem Ekmekçi's son, Yiğit, from her former marriage and the parties and themselves?

4) Did she ever witness a fight or quarrel between Şebnem Ekmekçi and Cem Ekmekçi, how does Cem Ekmekçi generally treat Şebnem Ekmekçi?

5) Did Cem Ekmekçi prevent Şebnem Ekmekçi from working or professing, or did he encourage her to work and profess? Did Cem Ekmekçi impose some limitations on the social life of Şebnem Ekmekçi?

6) Who pays for the cost of living, credit cards etc.?

7) How is the relationship of Şebnem Ekmekçi with both her own parents and with the parents of Cem Ekmekçi?

8) How was the way of life of Şebnem Ekmekçi during the marriage, how often did she travel, be it for her profession or for a holiday?

9) What else do you know about the marital conflict between the parties? Who, in your opinion, is responsible for the end of the marriage?

The address of our witness specified in the list of evidence has changed, here is the new address: **"1111SW 1st. Ave. Unit. 1224N, Miami, FL 33130, USA"**. Respectfully submitted to your honor.

Defendant – Counter claimer procurator
Attorney Dr. Nevzat Özdemir

**Ö Z D E M İ R   H U K U K   B Ü R O S U**
Sıraselviler Cad. Kriton Palas, 43/4 Taksim / İSTANBUL
Tel : 0212 2441123 – 2492022 – 2929793- 249 20 29Faks : 0212 2929795

03.02.2013

## İSTANBUL 12. AİLE MAHKEMESİ
## SAYIN HAKİMLİĞİ'NE

### Dosya No: 2011/869 E

**Dilekçeyi veren**
**Davalı/Karşı Davacı**    : Cem Ekmekçi

**Vekilleri**                      :  Av. Dr. Nevzat Özdemir

**Karşı Taraf**
**Davacı/Karşı Davalı**    : Şebnem Ekmekçi

**Vekili**                         :  Av. Şennur Pars

**Konusu**                     :  Delil listesinde belirtilen tanığımız Melis Eda Ekmekçi'nin halen bulunduğu ABD nde dinlenmesi esnasında tanıktan cevaplamasını istediğimiz sorular ile ilgilidir. Tanığımızın yeni adresi aşağıda belirtilmiştir.

**Açıklamalar**              :  Tanığın cevaplamasını istediğimiz sorular aşağıdaki gibidir.

1- Tarafları hangi nedenle tanımaktadır.
2- Şebnem Ekmekçi babası ile evlendikten sonra kendisi ile ilgilenmişmidir,   kendisine anne gibi davranmışmıdır, kendisini kıskınmışmıdır,   yurt dışında okurken Türkiye'ye döndüğünde tüm bir yaz boyu kendisi ile görüşmüş, ilgilenmişmidir,  kardeşi Mert'e karşı Şebnem Ekmekçi'nin davranışları nasıldır.
3- Şebnem Ekmekçi'nin önceki evliliğinden olan Yiğit ile tarafların ve kendilerinin ilişkileri nasıldır.
4- Şebnem Ekmekçi ile Cem Ekmekçi'nin kavga veya münakaşasına şahit olmuşmudur, Cem Ekmekçi genel olarak Şebnem Ekmekçi'ye nasıl davranmaktadır.
5- Cem Ekmekçi, Şebnem Ekmekçi'nin çalışmasına, mesleğini icra etmesine engel olmuşmudur, yoksa teşvik mi etmiştir. Kendisine sosyal hayatı ile ilgili kısıtlamalar getirmişmidir.
6- Evin geçimi, kredi kart vs ödemeler kimin tarafından yapılmaktadır.
7- Şebnem Ekmekçi'nin gerek kendi ana-babası ve gerekse de Cek Ekmekçi'nin ana-babası ve ailesi ile ilişkileri nasıldır.
8- Şebnem Ekmekçi evlilik birliği içerisinde nasıl bir hayat sürmüştür, gerek mesleği ile ilgili ve gerekse de gezi amaçlı seyahatlerin sıklığı nedir,
9- Başka tarafların geçimsizliği ile ilgili bildikleriniz nelerdir. Evlilik birliğinin yürümemesinde sizce kim kusurludur.

Tanığımızın  delil listesindeki adresi  değişmiş olup Yeni adresi **"1111SW 1st. Ave. Unit. 1224N, Miami, FL 33130, USA"** şeklindedir. Muhterem Mahkemeye saygı ile sunulur.

**Davalı/Karşı Davacı Vekili**
**Av. Dr. Nevzat Özdemir**

TO THE HONORS OF İSTANBUL 12th FAMILY COURT

### File No.: 2011/869 E

| | | |
|---|---|---|
| **Petitioner Defendant /** | | |
| **Counter Claimant** | : | Cem Ekmekçi |
| **Prosecutors** | : | Attorney Dr. Nevzat Özdemir |
| | | Sıraselviler Cad. 43/4 Kriton Palas Taksim / İSTANBUL. |
| **Opposing party** | | |
| **Plaintiff / Counter defendant** | : | Şebnem Ekmekçi |
| **Procurator** | : | Attorney Şennur Pars |
| **Subject Matter** | : | Responses for the court case and counter claim |
| **Explanations** | : | |

## I-    OUR RESPONSES AGAINST THE CLAIMS STATED IN THE LAWSUIT PETITION WHICH DO NOT ACCORD WITH REALITY

**1-**    My client Cem Ekmekçi and Şebnem Ekmekçi were married in 2003. They do not have any children from this marriage. The plaintiff has one child from her former marriage, whereas the defendant has two children from his former marriage.

**2-a-**    My client, since the beginning of the marriage, has performed all the duties imposed by the marriage institution and has always treated his wife and her family with due respect. He always supported his wife. He did whatever he can for the marriage to go well and for his wife to be happy.

**b-** It is not possible to state from this point on that the claim in the lawsuit petition "the union of the marriage has been shattered" is untrue. But contrary to the claims of the opposing party, the main reason behind the shattering of the union of marriage is the mental state, attributes and behavior of the plaintiff spouse. Despite all of these, Cem Ekmekçi, because of the education he received, his social status and the responsibility he felt for his wife and her family, did all he could do to continue the union of marriage.

Because of the untrue claims in the lawsuit petition and because of the fact that my client has understood that his wife had been collecting evidence up to this day for a special reason since receiving the notification regarding the court case, my client has no hope of continuing the marriage, consequently we are responding within the given time and we are filing our counter case.

**II-** There are events and explanations stated in the lawsuit petition which are claimed to be caused by the defendant Cem Ekmekçi and that this state of affairs caused the shattering of the union of marriage caused by only one party.

**These claims and inferred resolutions are either completely unreal or consist of endeavors to reflect the reality upside down, therefore, we aim to give responses for each of the claim respectively below and try to present the reality. About these realities that are to be either stated**

below or to appear during the hearing of the case, in terms of the shattering of the union of the marriage, the plaintiff is faulty, whereas the defendant Cem Ekmekçi is faultless. Our opinion that further sharing of information, in order not to hurt either of the parties more (on condition that our right to explain incidents not stated below is reserved), is not needed at this stage is respectfully submitted to Your Honor.

1- Holding the defendant responsible for the court case the plaintiff had filed against her former company where she worked before marrying but which she lost in the end, is not reasonable and is unacceptable. The plaintiff, at her own will, had given the prosecution for the mentioned court case to an attorney who had been responsible for the commercial cases of the defendant in the past, later she also gave the prosecution to another attorney. She lost the court case and the employer won the counter case. During the counter case, the court ruled that she would pay compensation to the employer. The court ruled that Şebnem Ekmekçi would pay compensation to the employer because of the fact that she did not go to work or perform her responsibilities and put her patients at risk as approved by the other testifier physicians and nurses. The plaintiff was not able to pay the whole compensation for which executionary proceedings were initiated by the creditor and the court ruled her to pay and received debt from the defendant.

During the court case and executionary proceedings the defendant husband gave all the support to his wife. In the beginning, he naturally recommended an attorney that he trusted and the attorney began to follow the case after the approval of his wife. In the meantime, another attorney was hired by the plaintiff.

Stating that she was unable to follow the processes of the court case, counter case or executionary proceedings (though she has the necessary intellectual competence to do that) is not only accusing the defendant of losing a court case in which she was guilty and the result was inevitable who did whatever he could do to help the plaintiff undeservedly, but also inappropriate and ill-willed behavior. Accusing other people including her attorney and her husband for losing a court case after the judgment process in which she was guilty instead of admitting her own faults is an attitude that is seen in our society nowadays, mainly suited for uneducated, asocial and egocentric people. The plaintiff accuses the lawyers (and probably her husband) for all the legal procedures initiated to the detriment of her including the executionary proceedings for almost one page, but does not mention what she herself was doing during the entire process. She could intervene in this legal process about herself at any time she wanted and she could prevent negative outcomes as a result of negligence. Accusing others instead of doing so is not only underserved, but also what she explains regarding this process has nothing to do with the court case at hand (if her husband is implied to be faulty in that process, he is not).

2- The plaintiff states that she took care of the children of the defendant as their own mother. There has been no such interest of her. One of the reasons that the daughter of the defendant went abroad to study was that the plaintiff did not want her. The plaintiff did not talk even once to the daughter of the defendant and did not form any kind of social relations with her during the time when the daughter of the defendant was at home on vacation during the summer. In order for a person to behave like a mother towards the children of her spouse from his former marriage, some outstanding virtues are necessary and these are not possessed by the plaintiff.

There have been no problems of the children of the defendant regarding their education, all of the expenses of education of the children were covered by the defendant, and the children acquired their successes through their own abilities and studies. There has been no contribution of the plaintiff to the children of the defendant in terms of their education.

The treatments of the illnesses of the children of the defendant was carried out by the expert physicians and all the expenses of the treatments were covered by the defendant. The plaintiff is not an expert on these issues. She only gave the names of experts on the field and the defendant hired those whom he thought fit for the treatment. The defendant also received help from others as to who were the expert physicians on the issues. As is known by everyone, everyone receives help from the people around them at times of illness in order to find the expert physician on the illness. Considering the communication technologies of our era, it is not hard to find out information on a given subject, especially information on who is the expert on a medical issue. The defendant, considering his socio-cultural status, is not someone to have difficulty over reaching the expert physicians. Since it is necessary for a physician to help any person on the street even if the physician does not know who that person is in terms of the ethics of the profession, the plaintiff's recommendation of physicians to the defendant for his children is not a sacrifice. It is utterly shameful that such issues are stated in the petition of lawsuit by the plaintiff, which in turn forces us to make such explanations (and which does not relate to the aims of a divorce case).

**3-** Three people in the flat in Tarabya and one person in the flat in Kemerburgaz, where the plaintiff spouse lived during the marriage, continuously worked for the cooking, house work, cleaning and laundry etc. and their salaries were paid by the defendant husband. The plaintiff did not perform any housework and said she was too tired to do housework. As a matter of fact, in the petition of lawsuit she states that what she was doing was to organize the house work and decide what will be cooked, which shows that she admits doing no house work.

So, unlike what is directly or indirectly stated in the petition of lawsuit, the plaintiff did not "exert herself" for her house, her husband and her children, nothing of that kind was desired, wanted or expected from her.

**4-** When the plaintiff and the defendant went abroad on vacation, children at home were consigned to the mother and father of the plaintiff at the house of the plaintiff/defendant. The mother and father of the plaintiff took away their grandson and gave him to his birth father.

Statements by the mother and father of the plaintiff regarding the maltreatment by the children of the defendant towards the child of the plaintiff are their personal views, also, the views of the plaintiff regarding this issue are hers alone. Instead of saying that the children did not get on well (she again chooses the easy path and accuses the opposing party) they use such expressions, which do not accord to the reality at all.

The elderlies of the defendant have their own lives and they have no other relationship to the marriage of the parties different from a simple social relationship. They did not have any idea regarding the marital issues between the couple like inheritance etc. and they did not express any opinion or make any statement on the issue. Issues like the plane crash etc. are extreme examples and are pure products of the imagination of the plaintiff.

The defendant did not behave badly towards Yiğit, the son of the plaintiff. In the flat which was purchased before the defendant was married, a private room, bathroom and toilet were provided for Yiğit; whatever the defendant bought for his children he bought Yiğit the same. He also made Yiğit a member in Kemer Golf & Country Club and Yiğit played tennis and basketball and went on swimming there for years. All of the expenses of this club were covered by the defendant. Yiğit is still a life-long member in the club. The defendant also tried to make Yiğit love skiing. At Uludağ Ski Center, where they went as a family, the defendant provided Yiğit with special courses on skiing and covered all of the expenses. Once, the defendant, the plaintiff and Yiğit went on holiday in Abant, without the presence of the defendant's children.

5- When Yiğit's father filed a court case for the return of the guardianship, the defendant became really upset and did not want to give away the guardianship of Yiğit.

The defendant and the plaintiff commonly decided to live in separate houses close to each other since that would be more appropriate if children lived separately; they also thought that this would give an advantage to the plaintiff in the court case for the return of the guardianship. The defendant willingly saw a psychologist during the court case of the return of the guardianship and the report of the psychologist at the end of this meeting favored the plaintiff and the court case was abandoned by the birth father.

The defendant and the plaintiff lived for 7 years together with their children on some days and together with each other on others at two different houses that are close to each other in Tarabya and then in Kemerburgaz. All of the expenses of the houses including their rent and their purchase later were covered by the defendant.

6- The plaintiff, as she does throughout the petition, (by ignoring her own faults, wrongdoings and negligence) accuses the defendant for the traffic accidents she had as well.

The plaintiff was involved in these accidents while she was driving alone. The defendant was not in the car during these accidents and subsequently has no relation whatsoever with the accidents. The traffic accidents stated by the plaintiff did not take place only in 2006 but also in other years as well, be it important or unimportant accidents. Alcohol use of the plaintiff beyond the limit of her own capacity was one of the reasons of these accidents. In none of the accidents was the defendant in the car. The plaintiff called for help to the defendant as she was involved in the accidents and the defendant came to the place where the accident happened each time and performed the necessary works including the removal of the car etc.

7- The mother and father of the plaintiff as well as her relatives came to the house of the plaintiff and the defendant whenever they needed, especially at times of medical treatment or surgery they came from Antalya and spent their treatment and post-treatment periods at the house of the defendant / plaintiff. The plaintiff also went to see her mother and father as much as she could, except for the times they were abroad together with the defendant or she was working. There is no kind of prohibition. As a matter of fact, it is utterly clear that such a prohibition is not possible considering the education levels, status, the way they lived and the relationship between them; even if there were such a prohibition the plaintiff would certainly reject that. As seen throughout the petition of lawsuit, the plaintiff accuses the defendant husband falsely and mercilessly (with the idea that this will serve to whatever she aims for).

8- Unlike what is stated in page 11, paragraph 11 of the petition of lawsuit, the defendant had no claim about the mother and father or the son of the plaintiff. He did not insult these people. The son of the plaintiff, Yiğit, spent the weekends from Friday evening to Sunday evening at his father's, pursuant to the resolution of the court upon divorce. He telephoned his father whenever he wanted. Since Yiğit was living together with his mother at a different house on weekdays, it is unreasonable to state that the defendant prevented Yiğit from making a telephone call or from participating in school ceremonies.

9- There is no such thing as intervening in the occupational activities of the plaintiff as stated in page 12, paragraph 12 of the petition of lawsuit. The plaintiff did not work for the first 9 months of the marriage stating that she was too tired and she worked for the private sector in the following years. These are all stated by the plaintiff herself in the petition of lawsuit.

The plaintiff participated in the medical congresses and meetings she thought appropriate. Which meetings she attended could be determined by the congress records.

The plaintiff always desired to go out at night without the presence of her spouse (the defendant). The defendant is right in not wanting his wife to go out at night alone, since she drinks alcohol beyond her limits and gets drunk and creates an undesirable image in front of people. His request that she should not go out after 8 PM at night has resulted from this. However the plaintiff took part in meetings which she thought essential and where alcohol is not consumed by asking her husband first.

10- The agreement signed by the plaintiff and the defendant; because of the fact that the plaintiff changed her ideas regarding the defendant very often and retracted the decisions they made; they wrote down the decisions they took commonly for their lives after 2011 (provided among the evidence list of the plaintiff) and signed it.

Here are some examples regarding changing ideas about living together: The plaintiff first agreed on July 2011 to go with the defendant to the United States where the defendant had to go for his business, afterwards the defendant provided for a green card (permanent living permission) for the plaintiff as a warrantor, but when it was time to go the plaintiff retracted and postponed going to the United States for three years; she stated that she was going to stop working after they went to the United States and she would take care of the house, but then she retracted this decision.

A forceful signing of this written document is out of question. Especially it is the plaintiff who continuously states that she is too tired and she does not want to work anymore. There is no such thing, a forceful signing of this document, she would tear this document apart if she wanted. What is aimed with this document is the desire of the defendant to determine the commonly agreed issues as he was unable to see his future properly since the plaintiff changes her mind very frequently, this document was not prepared forcefully and the plaintiff herself proposed signing such a document, therefore the document is not an evidence of oppression as presented by the plaintiff. In fact, the fact that the plaintiff did not want to continue the marriage since 2007, as could be proved by the statements of the testifiers, the rationale behind preparing such a document and giving it to her husband and therefore saving time for herself is understandable. Quitting making ceramics, which is used as another reason for undeservedly and wrongfully presenting the defendant as an oppressive

husband to Your Honor, is also the plaintiff's own choice. The defendant did not break anything apart from in an accident.

**11-** The flat in Kemerburgaz was purchased in the records of those days for the children of the defendant from her former marriage with the money inherited from their mother who passed away. Since the children are too young and since the defendant wanted to manage this non-movable until the children are 24 years old he had the right of usufruct himself.

The flat at Mesa Yaknı Evleri was also purchased with the money inherited from the mothers of the children with clear ownership of the house belonging to the children; the fee of the right of usufruct was mostly paid by the defendant and the flat was registered in the land registry with the right of usufruct belonging to the plaintiff. The amount paid by the plaintiff then for the right of usufruct was about 5% of the market value. Apart from this, in acquisition of these two non-movables, the revenues from the house which had a status of land and which was purchased long before the marriage were used as well, this is explained in paragraph 13 below. Payments could be seen in the records of the selling company.

**12-** The green card issue stated in page 13 paragraph 15 of the petition of lawsuit: The defendant applied for a permanent residence permit in the United States for himself and his two children before the marriage. The defendant was granted this right following the application. But although the plaintiff knew that the application for a residence permit was made before the marriage, the plaintiff stated that she did not want to go to the United States at this stage and afterwards, the defendant told the plaintiff that he would provide for a green card for the plaintiff as his wife when the plaintiff would go to the United States.

As a matter of fact, when the plaintiff later states that she wanted to go to the United Stated with her defendant husband (she changed her mind later again, stating that she would come three years later), the defendant provided for a green card for the plaintiff as her warrantor. Since the son of the plaintiff (Yiğit) was going to continue his education at Istanbul High School, since his birth father lived in Istanbul, since his birth father previously filed a court case to be granted his guardianship and since he always wanted to stay with his son and therefore there was the probability of Yiğit and his father living together in Istanbul, there was no need for providing for a green card for Yiğit. As a matter of fact, it is not possible in economic terms for the defendant to be a warrantor for everyone.

**13-** The flat registered as land in the registry as stated in page 13 paragraph 17 of the petition of lawsuit was purchased in 1991, long before the marriage. It was sold to the father of the defendant out of need for money. There are other inheritors of the father of the defendant than the defendant.

**14-** The Trust (endowment) stated in page 13 paragraph 18 of the petition of lawsuit was founded for the children of the defendant by the defendant who wanted to live continuously in the United States. Its aim and scope is the continuation of the marketing and counseling company Baker LLC founded in the USA by the defendant 14 years before the marriage, by the children of the defendant after him and patronizing of the children by their aunt in case the defendant passes away before they are 24 years old since they don't have a birth mother. The prime contract of the Trust has been attached to the file by the plaintiff.

**15-** The plaintiff was only able to manage the house she lived in together with her son. There were always assistants at the house where the defendant and his children lived; all of the cooking and

other house work was carried out by the assistant or assistants and all of the expenses were covered by the defendant. The plaintiff has made no contribution whatsoever on this issue.

**16-** The claim on battery as stated in page 14 paragraph 18 of the petition of lawsuit is solely stated by the plaintiff. It is not true. The defendant does not know anything about such an incident or a report. Nor does the defendant have any relation whatsoever with the stated 4-5 aggressive assaults. The defendant, to his great surprise, learned about these incidents from the petition of lawsuit.

The report provided as evidence is dated 04/12/2007. But the report number was given with the year 2008. The report starts with a claim of battery and statement of the spouse was added with an abbreviated signature. There is no written proceeding of the police station or report from forensic medicine. The defendant was not asked to come to the police station or questioned about such an incident. The report was given by a hospital that the plaintiff used to work for. Therefore, this report is either fake or organized about an incident about which the defendant does not have any knowledge or which he does not have any involvement in. And this report is hereby used in this court case by the plaintiff spouse who tried to collect evidence in a planned and systematic way to the detriment of her husband for years.

**17-** The son of the plaintiff wanted to spend special days and New Year's days with his father himself and this was reasonably accepted by the defendant.

**18-** In 1987, during the divorce case of the defendant in his first marriage which lasted for 2-3 months, the (ex)-wife of the defendant stated that she would only agree to divorce if the defendant was deemed faulty. The defendant agreed to this proposal in order for the court case to finish quickly. The divorce was resolved by deeming the defendant faulty. Since the defendant did not attend any of the hearings, he only learned what kind of a fault was stated in the resolution from the court decree after the court case. Therefore, the behavior stated as the fault of the defendant in that resolution was not performed by the defendant at all.

We are making such explanations since there is a statement on this issue in the petition of lawsuit. Otherwise, there is no relation between a court case resolved 25 years ago and the court case at hand.

**19-** The defendant covered all the expenses of both of the houses the parties lived for 7.5 years up until 1.5 years ago. Following the bad business, the plaintiff began to cover some of the expenses of the second house in the last 1.5 years.

The defendant paid the installments of the houses the plaintiff bought in Büyükçekmece, Mimar Sinan, and Panorama; apart from this the defendant helped the plaintiff pay for the installments most of the time.

**20-** Statements like throwing the pieces of broken glass, pushing etc. in page 15 paragraph 28 of the petition of lawsuit are mere products of the plaintiff's imagination. The defendant is 52 years old and does not have any criminal record. He was not involved in any incident because of aggressiveness, fight etc.

The defendant is very sensible about medical issues and goes through examination regularly. None of the physicians found out any symptom that would make them suspect a borderline narcissist

personality disorder. The plaintiff is an anesthetist and gives her opinions about fields that she is not an expert in and to say the least, insults her former husband with whom she was together once.

**21-** The reason why the defendant went to the United States is that his relation with the company of which he was the distributor in 2007 ended and although his business was quiet up to that point and although he made several further distribution agreements, his business became worse and worse with the effect of the global economic crisis; the personal and corporate debts increased to a great extent. The defendant, who is an importer of automotive spare parts, needed to go to the USA, which is the biggest market of the world in the sector, and take part the market physically and improve his situation and pay his debts. Otherwise, he would face bankruptcy. The fact that the revenues of the two companies, of which the defendant was the founder and administrator, in 2007 and in the years following, and finally in 2010 became profitless and began to lose money can be seen from the recordings. (A minuscule profitability was recorded on paper for the sake of the credibility of the company, it actually lost money). If the balance sheets of the companies belonging to years before and after 2007 are analyzed it could be seen that the revenues diminished and the companies began to lose money. But the plaintiff, who has been living a good life with the defendant with the financial privileges provided by the defendant up until 1.5 years ago, is now parting company with the defendant now that the business is going bad and revenues fell down to zero.

The plaintiff first decided to go to the USA with the defendant, afterwards a green card (permanent residence permit in the USA) was provided for by the defendant through the warranty of the defendant in the beginning of 2011. However, the plaintiff retracted her decision when it was time to go and stated that she would come three years later. The defendant had to agree to that. The fact that the defendant provided for a green card for the plaintiff and the plaintiff initiated procedures in the USA Embassy provides the evidence that the couple wanted to move to the USA together. But the plaintiff postponed the time she would go to US for three years.

The defendant has to be active and has to live in the USA, the biggest market of the automotive sector in order to straighten his business. The Automotive company (Eksan Automotive) of which he is a partner and administrator has not been making a profit in recent years. The defendant has a personal credit card debt of 60,000 TL. There is almost no money in his bank accounts (both in the United States and in Turkey) or he has used credit.

**22-** The plaintiff, who did not own any non-movables before marrying the defendant and whose total wealth was just a little car, has acquired two non-movables after marrying, the first of these is the right of usufruct of a house (95% of whose money has been paid by the defendant and the house is registered in the name of the plaintiff) and the second is acquired through getting help from the defendant whenever she was short of money. She also acquired a 4x4 vehicle whose total cost was paid by the defendant and which was put to the service of the plaintiff.

The plaintiff, after getting married, played tennis and golf for years at one of the best clubs in Europe, Kemer Golf and Country Club, to which the defendant is a member and to which the plaintiff was made a life-long member by the defendant.

The plaintiff who had been abroad only once before marrying the defendant, went on vacation many times together with the defendant in South Africa (safari), The Maldives, Las Vegas, Monte Carlo, Nice, Barcelona, Mallorca, Dubai, Cairo, Bangkok, Singapore, Mexico, Bahamas, New York, Atlantic

City, Amsterdam, Porto Rico, Venice, Milan, Paris, Genoa and Batumi (these can be seen in the passport registries). She also lived in decent neighborhoods like Tarabya (in a detached house) and Kemer Country/Kemerburgaz.

However, the plaintiff has understood that such a life would not continue because of the bad business of the defendant; she went to the USA and lived with the defendant who has settled there for a while, but upon seeing the mediocre house there consisted of two rooms and considering that her life would not be the same anymore, the plaintiff, who used to go with the defendant on vacations as well as each business trip when the defendant was well off, began to talk about divorce after coming back from the USA. And she began to express complaints about this issue that she never spoke of before.

As it is clear, the plaintiff, who was beside the defendant in prosperous days, first said that she was going to come with the defendant to the USA upon understanding that the defendant is running out of money and by saying this took advantage of her husband's status and acquired a green card, and then she said she was going to come three years later, and now she says she wants to divorce. The plaintiff, who stood by the defendant when he was economically well off, has now filed this divorce case with the plan to acquire whatever she can (unfortunately there has been left nothing out there) before he has completely gone bankrupt, especially now that she understood that the economic status of the defendant has become worse and worse (almost to zero). The plaintiff is ill-willed, she wants to get at her aim by talking about her traffic accidents, the court cases she lost because of neglecting her job and putting the patients at the risk of death, arranging (fake or manipulated) battery reports dated years ago and by printing out e-mails. As they say in Turkish "love has flown away with the money".

**23-** The Baker LLC company of the defendant makes marketing counseling and now earns no money.

The daughter of the defendant studies in the USA thanks to the 25% unreturned scholarship and 75% state credit, all of the expenses of her education are covered by the USA Government, which she will pay back once she begins to work through cuts in her salary. She is also employed part-time.

Since the business of the defendant has gone bad, he asked his daughter, who has been the champion of Turkey twice and who rides for the Turkish National Team, to quit riding. His son quit riding for this reason as well, he now studies in the USA at a cost free high school.

The defendant spent 10,000 TL on a credit card during the month he settled in the US in order to cover the settlement expenses, as it is seen in the evidence of the plaintiff. In other words, this spending has been made in return for debt. As it is seen in the evidence of the plaintiff, the next month the credit card spending of the defendant is 1,800 TL.

The only income of the defendant now is his 985 TL retirement pension. He gets by only through the help of his family (and especially his father). He has credit card debts of 50,000 TL. He also has a debt of 40,000 USD which was granted as a credit by the state for his daughter's education in the USA. He pays a rent of 1,620 USD in the USA.

The defendant has a 30% share in the Eksan Inc. which has not made profit for years. This is a commercial company and makes distributions, there is no non-movable or stock.

The defendant did not initiate a retirement program without the knowledge of the plaintiff. As a matter of fact, the plaintiff talks about this retirement program, which shows that she also knows about the program.

**24-** The defendant has no relation whatsoever with the dating sites referred in the petition of lawsuit. The printouts of the e-mails in the petition of lawsuit do not belong to the defendant. The defendant has learned about the existence of such web sites upon their reference in the petition of lawsuit. He does not know anything about them.

We are predicting that the plaintiff, who knows the e-mail address and password of the defendant, has secretly entered into his e-mail account without his permission and created these e-mail printouts. The fact that the plaintiff who wants to divorce has gone too far upsets the defendant very much. (As a matter of fact, even if these documents are real, they cannot be used as evidence since they have not been acquired through legal ways.) It would be enough if the plaintiff just told the defendant that she wanted to divorce. But since the plaintiff desires to take a share from the anticipated wealth of the defendant, she produced these e-mail printouts through illegal ways within the haste of creating false and invalid evidence to the detriment of her husband.

**25-** The e-mails referred to in the page 16 paragraph 35 of the petition of lawsuit do not belong to the defendant either. The plaintiff, just as she produced the e-mails about the dating sites explained in the previous paragraph through using the e-mail account and password of the defendant, created the e-mails referred in this paragraph as well so as to support the claims in the previous paragraph. The defendant did not log in to the mentioned dating sites and is not a party to the e-mail traffic afterwards. It is seen clearly at this point that the plaintiff was trying to produce evidence for the divorce case she planned to file in the future. When these e-mails are analyzed, it is seen that the plaintiff blames the defendant in a long and accusing way and the defendant admits everything. Even the style and explicandum of the e-mails show that these e-mails have been produced by the plaintiff in order to provide evidence for this case.

The defendant also wants to divorce upon seeing the petition of lawsuit of the plaintiff, what the plaintiff has done with his e-mail account, her activities of collecting evidence for years and her claims of indemnity, he wants to divorce as well.

**26-** Contrary to what is stated in the page 16 paragraph 36 of the petition of lawsuit, the plaintiff, who had no estate before marrying the defendant acquired two non-movables; the money for the right of usufruct of the first house was paid by the defendant, and in acquisition of the second house the defendant helped the plaintiff pay the installments. Below is the list of non-movables acquired by the plaintiff after the marriage:

- Right of usufruct in Mesa Yankı neighborhood in Göktürk / Istanbul. (95% of the money needed for the right of usufruct was paid by the defendant and the house was registered in the name of the plaintiff). (MESA Inc. has the payment receipts of the defendant).

- A flat in Panorama site in Mimarsinan / Istanbul. (As also stated by the plaintiff, some of the installments were paid by the defendant, and most of the time the defendant backed up the payment of the installments).

- Time share property in Bodrum Judges Neighborhood

- Honda CRV 4x4 vehicle. (All of the money was paid by the defendant, the selling company, Ciftkurtlar, has the payment receipts of the defendant).

**27-** The plaintiff did not explain the health problems of her son to the defendant before marriage, and then, at first, said he is partly autistic, and then she said he has a walking disorder, and then she said he has hormonal problems and lastly she said his genital organs are underdeveloped. None of these health problems created a problem for the defendant and he treated Yiğit with sensibility and tried to help him. Those problems which were unknown before the marriage created some psychological problems in the son of the plaintiff and this prevented the son of the plaintiff and the children of the defendant from socializing with each other.

**28-** The defendant has no relation whatsoever with the companies stated in the result and claim section: Arı Auto Industry and Commerce Inc., Uyum Representation Commerce and Industry Collective Company Turan Ekmekçi and His Partners, Uyum Automotive Representation Commerce and Industry Limited Company in liquidation. The defendant is not personally involved in the mentioned court case being heard in Sivas 1st Civil Court. This court case is between the legal personality of Eksan Automotive Marketing, Commerce and Industry Inc. of which the defendant is a partner and another legal personality.

**29-** The prime contract of Baker LLC Company, voucher of the Trust that Cem Ekmekçi founded for his children, compulsory insurance bill of Baker LLC according to the laws of USA, Check sheets belonging to Cem Ekmekçi, notification sent by ABD tax office to Baker LLC, Insurance bills are documents related to the ordinary business life which are stated among the evidence of the plaintiff. These were missed from the office of the defendant. They were most probably taken away from the office of the defendant by the plaintiff without the information and permission of the defendant. This is against the law. Documents acquired through illegal ways cannot be used as evidence. As a matter of fact, whatever the plaintiff is trying to prove by providing these documents, there is no information that the defendant claims to be otherwise.

**30-** There is no dowry belonging to the plaintiff and held by the defendant.


**III- ALL OF THE CLAIMS OF THE PLAINTIFF REGARDING ALLOWANCE, MATERIAL AND MORAL INDEMNITIES AND CLAIMS ON CIRCUMSPECTION ARE NOT BASED ON LEGAL GROUNDS AND ARE NOT ACCEPTABLE.**

None of the claims provided as a ground for the claims above are, as explained above, true. The plaintiff was not oppressed, was not prevented from working. On the contrary the defendant supported the plaintiff on this issue and the plaintiff continued her business life. In the petition of lawsuit itself, it is stated that the short terms during which the plaintiff did not work was resulted from the plaintiff's own wish and want. A separate house was provided for the plaintiff through the wish of the plaintiff and with the idea that it would be better for Yiğit. The defendant husband made the house work easier through hiring more than one assistant at home and therefore provided grounds for the plaintiff to work and continue her career. The plaintiff kept all the money she earned from her occupation and did not contribute to the family budget. All of the expenses of the family

were covered by the defendant. The plaintiff acquired wealth both through her own earnings and through the contributions of her husband after the marriage. With regard to the plaintiff, there is no possibility of not being able to get by or becoming poor after the divorce. The unfairness of the claims made by the plaintiff regarding secondary results of the divorcement shall be shown below.

## 1- The grounds for the plaintiff to claim ancillary relief do not exist

In the new regulation in the Civil Code (CC) which depends on the equality of man and woman, the responsibility of maintenance and sustentation does not solely belong to the husband as in the past, but to both of spouses. As a matter of fact, according to Article 186/3 of CC "Spouses contribute to the expenses of the union according to their potential of labor and wealth". Therefore, if one of the spouses will not be able to get by with his/her own material resources after the marriage, the other materially able spouse will have to contribute to the maintenance and sustentation of the other spouse. (**Turgut Akıntürk,** Türk Medeni Hukuku, Yeni Medeni Kanuna Uyarlanmış Aile Hukuku, Volume II, 9th Edition, Istanbul 2004, p. 282. Because of this Akıntürk suggests that such allowances called ancillary relief should now be called privity or participation allowance. **Akıntürk,** 283). But as stated by the Supreme Court if the wife (or the husband) has enough wealth or income, there is no need to rule ancillary relief to the benefit of that spouse. (Please see for the resolutions: **Ömer Uğur Gençcan**, Boşanma-Nafaka-Evlilik Birliğinin Korunması ve Velayet Kararları Konusunda Uygulama Sorunları, Uygulamalalı Aile Hukuku Sertifika Programı, November 18-20, 2005, Istanbul University of Commerce Press, pp. 183-184). The Supreme Court searches for this in order to determine the difference between the past and now since 2002, when the new Civil Code was introduced.

It is definite in this case that the plaintiff spouse has enough wealth and income to cover her own maintenance and sustentation. (She works as a physician, she does not pay any rent and she has a side income). Therefore, the spouse will not have to provide ancillary relief for the other spouse who is not in need of maintenance or sustentation.

## 2- The grounds for the plaintiff to claim welfare allowance do not exist

Although the plaintiff does not claim welfare allowance at this stage, due to the possibility that she would make such a claim in the later stages of the case, we are providing our objections and defense on this issue as well.

Welfare Allowance as regulated in Article 175 of Turkish Civil Code. According to this provision;

"**The party which will become poor** because of the divorce may claim an allowance from the other party indefinitely, **on condition that his/her fault is not more gross**."

The aim of welfare allowance is to protect the party which will become poor because of the divorce. The conditions of the welfare allowance are listed as follows:

a- The divorce should be ruled by the court,

b- One of the parties should make such a claim,

c- The party who claims welfare allowance should be becoming poor because of the divorce.

The main reason behind claiming the welfare allowance is that the claiming party will become poor because of the divorce. In Article 175 of Turkish Civil Code, the term poverty is referred without giving a definition of the term and the condition that the spouse is deprived of necessary skills and opportunities to work or that the spouse cannot provide for his/her own maintenance and needs through his/her wealth is explained. (Ebru Ceylan, Türk ve İsviçre Hukukunda Boşanmanın Hukuki Sonuçları, Galatasaray University Press, Istanbul, 2006, p. 108). In order to rule for the welfare allowance it should be researched whether the claiming party will become poor as a result of the divorce and whether the poverty results from the divorce and whether there will be a real poverty.

In Article 175 of Turkish Civil Code, a direct relationship between becoming poor and divorce through the use of the expression the spouse who will become poor because of the divorce. Whereas by real poverty, it is not having to live under economic conditions worse than before that is expressed, but the condition in which the person is not able to satisfy daily, ordinary and compulsory needs. (Ceylan, 108). In the resolutions of the Supreme Court the poverty is defined by the minimum wage.

Under the light of what has been stated above, since it cannot be said that the plaintiff spouse will become poor as expressed in Article 175 of Turkish Civil Code, the grounds for the plaintiff to claim welfare allowance do not exist.

d- The fault of the party claiming welfare allowance should not be more gross than the other party. All of the incidents stated above (II) and all of the incidents to appear during the hearing shall show that for the shattering of the union of marriage, the plaintiff has more gross faults. Therefore, the plaintiff cannot claim welfare allowance since the necessary grounds for claiming welfare allowance do not exist.

## 3- The grounds for the plaintiff to claim material indemnity do not exist

The material indemnity is regulated in Article 174/1 of Turkish Civil Code. According to this provision;

"The party which is faultless or has less faults and whose current or expected interests are violated because of the divorce may claim a reasonable amount of material indemnity from the other party".

The conditions of material indemnity are listed as follows:

a- The divorce should be ruled by the court,

b- The plaintiff should have material loss because of the divorce. Current or expected interests of the spouse who claims material indemnity because of the divorce should be violated. The claiming party has to prove what kind of material loss he/she would face because of the divorce. In the resolutions of the Supreme Court what would be considered as current or expected interest are materialized. In the case at hand, the plaintiff spouse's current or expected interests will not be violated. As indirectly expressed in the petition of lawsuit (if that is what is aimed for), the fact that the defendant husband can no longer provide for the same living standards because of the deteriorating economic conditions does not give the plaintiff the right to claim material compensation of her loss.

c- Material loss should result from the divorce. Current or expected interests of the party claiming material indemnity as a result of the divorce should be lost as a result of an illegal action. In order to hold a person responsible for a behavior that is considered illegal, that behavior should have the

qualities of a behavior deemed prohibited by law. There are examples of what kind of behavior could be considered illegal in the doctrine (**Akıntürk**, 242).

d- The plaintiff should be faultless or should have less faults in the divorce. The spouse claiming material indemnity should prove that he/she decided to divorce as a result of the fault of the opposing party. The fault expressed in Article 174/1 of Turkish Civil Code is the requirements that the union of marriage is not satisfied. (**Ceylan**, 83). In the divorce cases where both of the spouses are faulty, it is accepted that the claim on material indemnity should be rejected. In the case at hand, it was tried to be explained above that the defendant spouse performed the duties required by the union of marriage. For the incidents leading to the shattering of the union of marriage the plaintiff spouse is exclusively responsible. Therefore, she cannot claim material indemnity.

e- The defendant party should be faulty in the divorce. As explained above the defendant spouse is faultless. Therefore the claim on material indemnity by the plaintiff is baseless.

f- There has to be causality relation between divorce and material loss. In the case at hand divorce and loss of interest (if there is any) do not result from the faulty behavior of the defendant, on the contrary, from the faulty behavior of the plaintiff. The working life or occupational career of the plaintiff did not end as a result of the marriage, on the contrary she was able to continue working in a less intensive way through the help of her husband. The working life of the plaintiff was shaped by her own wishes. The defendant did not create any obstacle in front of the working life or occupational career of the plaintiff by any means but on the contrary supported the plaintiff according to her own wishes. As it is seen, the plaintiff did not have any material loss due to the marriage and therefore there is no causality relation between the non-existent loss and marriage. There is nothing the defendant lost due to the marriage and there is nothing the defendant claims material indemnity for.

## 4- The grounds for the plaintiff to claim moral indemnity do not exist

The moral indemnity is regulated in Article 174/2 of Turkish Civil Code. According to this provision;

"The party whose personal rights are violated as a result of the incidents leading to divorce may claim a reasonable amount of money to be paid as a moral indemnity from the faulty party."

The conditions of the moral indemnity are listed as follows:

a- The divorce should be ruled by the court,

b- The plaintiff should have moral damage because of the divorce. The incidents leading to the divorce should be violating the personal rights of the claiming party. When determining whether the personal rights are violated or not, the quality of the incidents leading to divorce and the extent to which the party that is claiming moral indemnity was upset should be taken into consideration. (**Ceylan**, 96; **Akıntürk**, 299). When the resolutions of the Supreme Court which state in which cases moral indemnity should be ruled are analyzed it is seen in the case at hand that the defendant husband did not perform any behavior that may provide the grounds for ruling moral indemnity to the detriment of the defendant.

In the resolutions of the Supreme Court regarding the resolution of moral indemnity the following expressions are put forward. "In order rule moral indemnity, the incident leading to the divorce

should have impacts on the living space of the faultless spouse, cause deep sorrow, pain, disgrace, degradation, psychological crisis and trauma, loss of joy of living in the spouse. The moral suffering and devastation should be immense. It should be as if the person should be in a condition where he/she cannot socialize, cannot be a part of society and cannot get any joy out of living." In the case at hand, none of the definitions stated in the Supreme Court application is present. None of the actions, attitudes or behavior of the defendant are enough to create the impacts stated above. Besides, the party which claims moral indemnity is mature, has an economic standard well beyond the country average, is well-educated and faced a long marriage and divorce before. When all these aspects are analyzed together it is seen that the grounds for the plaintiff to claim moral indemnity do not exist.

As explained above, all of the accusations regarding the maltreatment of the defendant towards the plaintiff as claimed in the petition of lawsuit are completely untrue and pose a direct assault on the personal values of the defendant. The defendant, never in his life time involved in such behavior and did not perform such behavior towards his wife during the marriage. Therefore, he strongly rejects the groundless accusations directed towards him.

c- The moral damage should result from the divorce. In the case at hand there is no moral damage resulting from the divorce and moreover as a matter of fact there is no moral damage at all.

d- The defendant should be faulty in the divorce. As we tried to present and explain above, the defendant husband is faultless.

e- There has to be a causality relation between divorce and moral damage. There has to be a moral damage resulting from the defendant spouse's behavior leading to the divorce. In the case at hand, the defendant husband did not perform any behavior leading to the divorce and furthermore there is no moral damage at all.

IV- It is understood that, in the part "result and claim" of the petition of lawsuit of the plaintiff, the plaintiff wants the liquidation of the marital property between the parties with her claim "determination and liquidation of the acquired goods", and that the plaintiff has a separate claim and case to this end. Pursuant to Article 119/1-d of Code of Civil Procedure, the plaintiff has to show the value of the subject matter of the case and conclude the charge fee.

1- As explained in the resolutions of the Supreme Court, claim on the liquidation of the marital property is not among the secondary results of the divorce; it is an independent, separate and a monetary claim. Therefore, it is subject to proportionate charge fee. The petition of lawsuit, as it is, is deficient in terms of its content regarding the claim/case of the plaintiff to this end. The plaintiff should provide the monetary value of the subject matter of the case in court cases on wealth rights. (Code of Civil Procedure. 119/1-d). This is one of the compulsory aspects of the petition of lawsuit (**H. Pekcanıtez/O. Atalay/M. Özekes**, Medeni Usul Hukuku, 10th Edition, Ankara, 2011, 323.)

If the plaintiff did not show the value of the subject matter of the court case, the plaintiff is given a 7-day definite period by the court to determine this value. If the value is not provided within this time, the court will not be considered to be filed. (Code of Civil Court, Article 119/2). If, during the hearing, it is understood that there is a deficiency in the value that has been determined, the hearing goes on only for that occasion but the court case is not continued until the deficient charge fee is concluded and the file is removed from proceeding (Law on Charges Article: 16/4, Code of Civil Procedure

Article 150). (**H. Pekcanıtez/O. Atalay/M. Özekes**, 323). Therefore, we request that the plaintiff is given a 7-day definite period to provide the value of the case and to conclude the charge fee for the plaintiff's court case for the liquidation of the marital property.

**2-** Since none of the marital properties that the law regards as alternative property existed at the time of marriage between the couple, the participation regime to the acquired goods shall be applied. Participation regime to the acquired goods is actually a system regulating the sharing of acquired goods in return for working through liquidation in accordance with the regulations in the law when the marriage ends with incidents of death or divorce, pursuant to Article 219 of Civil Code. Personal goods are not subject to sharing by any means. According to Article 220 which defines what could be regarded as personal goods, goods belonging to one of the spouses at the beginning of marital property regime and the values replacing these cannot be subject to sharing. Again, the liquidation is valid for the goods acquired during the time of liquidation (for this case, on the date this court case has been filed). In other words, acquired but consumed goods cannot be a subject matter of liquidation.

Rights belonging to the defendant on the non-movables regarding the defendant as specified in the petition of lawsuit are not acquired through the revenues of acquired goods as mentioned above. Both of the non-movables were either the inheritance from the former wife of the defendant who passed away or purchased with the money acquired from the selling of a non-movable acquired before the marriage. As a matter of fact, the defendant does not have any belonging that may be subject to liquidation at the time of this court case. The fact that the revenues acquired during the marriage has been spent and consumed, that the defendant has no savings at the time when this court case was filed, and that he is now able to get by only through the help of his family was explained to Your Honor above. Therefore the defendant has no belongings that are subject to liquidation at the time when this court case was filed.

**V-1)** Upon the request of the plaintiff, several precautions, together with the preliminary proceedings, have been ruled on the issues as follows: a) the defendant shall not behave in such a way that would give fear or include violence against the plaintiff and the other people with whom the plaintiff lives together at the same house, b) The commonly used house will be given to the plaintiff, c) The defendant shall not cause any harm to the belongings of family members living together with the plaintiff, d) the defendant shall not disturb the plaintiff through communication devices.

As explained to Your Honor above, the parties have actually been living in different houses for seven years. The defendant (together with his children) has settled in the USA for the last one year and does not live in Istanbul. The plaintiff, in the petition of lawsuit, created a horrible image of the defendant, and tried to affect Your Honor especially by referring irrelevantly to national and international legislation and court resolutions regarding the women's rights and the prevention of violence against women as if there are going to be horrible things if such precautions are not taken. Under the light of what has been stated above, there is no possibility that the defendant could even think about doing such things which are the subject matters of the precaution. Therefore we request that such unfair and degrading precautions be removed.

**2)** Eksan company, of which the defendant has a small share, which has also been stated above was founded before the marriage of the defendant (01/30/2003). Therefore we wish that no precautions

will be placed on the shares of this company either. (In the preliminary proceeding the date of the marriage was typed as 01/30/2002, which was a typing mistake).

**VI - Counter Claim**

**1) Divorce:** As tried to be explained above and as it will be clear during the hearings, the union of marriage between the parties has been shattered due to reasons originated from Şebnem Ekmekçi to the extent that Cem Ekmekçi cannot be expected to try to continue the marriage. For this shattering, the plaintiff/counter defendant Şebnem Ekmekçi is faulty, whereas the defendant/counterclaimant Cem Ekmekçi is faultless. For these reasons, we request that the court case filed by the faulty spouse Şebnem Ekmekçi for divorce to be rejected, and that faultless defendant/counterclaimant Cem Ekmekçi's request to divorce to be accepted and that the divorce of the parties should be ruled.

**2) Liquidation of the marital property:** We wish the determination of the acquired goods owned by Şebnem Ekmekçi (as explained in II-26[th] paragraph above) between the beginning of the marriage and filing of this court case and we also wish that for now 1,000.00 TL participation debt (to surplus value) and Value Increase Share debt to be taken from plaintiff/counter defendant Şebnem Ekmekçi and be given to defendant/counter claimant Cem Ekmekçi according to Article 107 of the Code of Civil Procedure.

Goods owned by Şebnem Ekmekçi acquired during the marriage are as follows:

- Right of usufruct at Göktürk/ Istanbul Mesa Yankı Sitesi. (95% of the charge money was paid by the defendant and the house was registered in the name of the plaintiff. We are requesting at this point that the Value Increase Share shall be given to the defendant/counterclaimant. (MESA Inc. has the payment receipts of the defendant).

- A flat in Mimarsinan/Istanbul Panorama Sitesi. (As also expressed by the plaintiff some of the installments were paid by the defendant and the deficiencies in most of the installments were compensated by the defendant).

- Time sharing property in Bodrum Judges Neighborhood.

- Honda CRV 4x4 vehicle. (Most of the charge of the vehicle -95%- was paid by the defendant. Ciftkurtlar company has the payment receipts of the defendant).

- Existing money, share certificate and debenture bonds in various banks/accounts

Legal Grounds: Civil Code, Code of Civil Procedure and other relevant legislation

**Evidence:**      **1-** Registration
**2-** Land registries
**3-** Hospital records where the plaintiff/counter defendant works for
**4-** Bank records, Tax office records,
**5-** Statements of the testifiers: Our testifiers are listed below (their addresses shall be provided)

**a)** Levent Solakarı
**b)** İnci Çelikkol
**c)** İlker Arda

**d)** Murat Akal
**e)** Özlem Akal
**f)** Melis Eda Ekmekçi
**g)** Ayşe Vural
**h)** Turan Ekmekçi
**i)** Gönül Ekmekçi

**6)** Expert examining and all the other legal evidence (our right to provide further evidence and testifier is reserved).

<u>Result of the request:</u> For all the reasons stated and explained above, we request that:

**1)** The court case on divorce filed by plaintiff/counterclaimant faulty spouse Şebnem Ekmekçi shall be rejected and the court case on divorce filed by defendant/counterclaimant faultless spouse Cem Ekmekçi shall be accepted and the parties shall divorce,

**2)** All of the ancillary relief, welfare allowance, material and moral indemnity requests of the plaintiff/counter defendant shall be rejected since they are groundless, all of the precautions stated in Article 7 of the preliminary proceeding shall be removed,

**3)** On condition that the defendant/counterclaimant reserves the right to request material and moral indemnities, the wealth acquired during the union of marriage shall be liquidated pursuant to Article 107 of Code of Civil Proceedings and (reserving our right to increase the value of the court case) for now 1,000.00 TL (to surplus value) participation debt and (Value Increase Share) and (contribution margin) debt shall be taken from plaintiff/counter defendant Şebnem Ekmekçi and be given to defendant/counterclaimant Cem Ekmekçi,

**4)** Since the Eksan company of which the defendant has a small share was founded before the marriage (before 01/30/2003), no precautions shall be placed upon the shares of this company. (In the preliminary proceeding the date of the marriage was typed as 01/30/2002, which was a typing mistake).

**5)** Since the plaintiff has another request and court case with the request "determination and liquidation of the goods acquired" for the liquidation of the marital property between the parties, the plaintiff shall show the value of the subject matter of the court case pursuant to Article 119/1-d of Code of Civil Proceedings and conclude the court charge,

**6)** All of the court expenses and the fee of the attorney shall be requested from the plaintiff with the title of attorney,

Respectfully submitted to Your Honor, 01/12/2011

Attorney of the defendant/counterclaimant
Attorney Dr. Nevzat Özdemir



TO THE HONORS OF ISTANBUL FAMILY COURT ON DUTY

CASE No.               :2011/

PLAINTIFF_____:Şebnem Ekmekçi. TC ID No. 25843947664
               Mesa Yankı Evleri. A-1 Blok. D: 2 Göktürk. Eyüp - İstanbul

PROSECUTOR_____:Attorney Şennur Pars

               Ebuzziya Cad. Mustafabey İşhanı. No. 8/8 Bakırköy / Istanbul.

DEFENDANT_____:Cem Ekmekçi. TC ID No. 34972575518

               Cami Sokak. No. 12 D: 5 Mertürk İşhanı Göktürk. Eyüp - Istanbul.

SUBJECT MATTER       :This is the petition for divorce including the following demands. For the willful default of the defendant spouse;

1) Since the union of marriage has been shattered and a mutual life could not be reconstructed and since it became impossible to continue the marriage we demand that the spouses divorce and we also demand;

2) On condition that the rights regarding the surplus are reserved, 500,000 TL material and 500,000 TL moral indemnities,

3) Pursuant to the provisions of Law on the Protection of the Family passed on 01/14/1998 (Published in the official journal on 01/17/1998, number 23233),

a) The defendant shall not speak or act in any way that will generate fear or violence towards the plaintiff herself, to her son from her former marriage and to other family members (her father and mother etc.),

b) The defendant shall be kept away from the common house, and this house shall be granted to the plaintiff woman spouse; the defendant shall be kept away from the house or business office of the woman spouse used separately,

c) The defendant shall not cause any harm to the material goods of the plaintiff, to her son from her former marriage, to other family members including her mother and father,

d) The defendant shall not cause any inconvenience for the plaintiff, for her son from her former marriage, for other family members including her mother and father by using communication devices,

e) The defendant shall be made to apply for a diagnosis or treatment to a medical organization deemed appropriate by Your Honor,

4) An annotation of "family estate" shall be put on the estate with the address Mesa Yankı Evleri, A-1 Blok D: 2 Göktürk - Eyüp - Istanbul where the plaintiff and the defendant reside together,

5) The defendant shall restitute to the plaintiff the total property of the plaintiff held by the defendant,

6) The defendant shall restitute to the plaintiff the personal belongings of the plaintiff held by the defendant,

7) The acquired goods shall be determined and dissolved and the defendant's share in the surplus value shall rightfully be reduced or completely eliminated since the defendant is faulty and attempted against life,

8) All the precautions proposed by Your Honor apart from the Law on the Protection of the Family, and pursuant to the Code of Civil Procedure and other legislation regarding the estates and body existence of the plaintiff shall be taken,

9) A mandatory injunction shall be placed on all the rights of the defendant including movables, money, current or time deposit, rented safe deposit box, share certificates, insurance policy receivable currently held by banks, financial institutions and third parties so that the defendant shall not be able to smuggle any belongings,

10) A mandatory injunction shall be placed on the non-movables owned by the defendant so that the defendant shall not be able to smuggle any non-movable,

11) A mandatory injunction shall be placed on the cars owned by the defendant so that the defendant shall not be able to smuggle any cars,

12) A mandatory injunction shall be placed on the shares of the companies founded or co-founded by the defendant,

13) Ancillary relief of 20,000/month shall be given to the plaintiff spouse,

14) Court charges and counsel's fee shall be taken from the defendant and given to the plaintiff.

LEGAL GROUNDS           :1) The Convention for the Protection of Human Rights and Fundamental Freedoms (ECHR)

"Article 8 – Right to respect for private and family life"

"Everyone has the right to respect for his private and family life, his home and his correspondence."

(Gilles Duterge, Ursula Kilkelly, Examples from the Resolutions of European Court of Human Rights - A Guide to the Implementation of European Convention of Human Rights),

2) United Nations Universal Declaration of Human Rights,

3) United Nations Convention on the Elimination of All Forms of Discrimination Against Women,

4) The 3rd World Woman Conference - Nairobi - Strategies for Future,

5) 2nd World Woman Conference Documents (1980 - Copenhagen),

6) 4th World Woman Conference Documents (Beijing Declaration and Action Platform),

7) Wien Declaration of Human Rights 1993,

8) The Political Rights of Women 1952,

9) Assignment of international reporter "in order to research about the causes and results of violence against women", 1994,

10) CEDAW End to the Discrimination Against Women Convention, 1979,

11) European Union / Turkey Progress Reports,

(Page 146: Turkey is the only country convicted to indemnity by European Court of Human Rights since she was unable to protect women against violence.)

EXAMPLE: European Court of Human Rights ruled in the Nahide Opuz case that "Turkey was unable to protect the victims effectively".

12) 2007 / 2010 National Action Plan

| Short term | 2007/2008 |
| Mid term | 2007/2009 |
| Long term | 2007/2010 |

13) Constitution Article 90,

14) Turkish Penal Code Article: 96, Punishment of Maltreatment

"European Convention on the prevention of Torture or Inhumane or Degrading Punishment or Treatment" dated November 15-26, 1987,

15) Turkish Penal Code Article: 125, Punishment of Breaking the Peace and Tranquility of People,

16) Civil Code Article: 169,

17) Turkish Penal Code Article: 125, Punishment of Insult,

18) Code of Obligations Article: 49, "...he whose personal interests are violated could request a compensation for the material loss as well as moral indemnity depending on the especial importance of the loss",

19) Constitution Article: 12, "....Everyone possesses inherent fundamental rights and freedoms which are inviolable and inalienable....",

20) Law 4787 on the Foundation of Family Courts,

21) Directive on the Implementation of the Law on the Protection of Family,

22) Circular letter of The Ministry of Justice General Directorate of Penal Affairs "...on The Implementation of the Law on the Protection of Family dated 01/01/2006...",

23) Circular letter of The Ministry of the Interior General Directorate of Penal Affairs "...on The Implementation of the Law on the Protection of Family" (2005/123 General Directorate of Security Affairs 2005/94) 12/02/2005,

24) Circular letter of the Prime Ministry (2006/17),

25) Code of Civil Procedure Article: 101,

26) Turkish Penal Code Articles: 96, 106, 125, 232, 233, 169, 166, 162, 175, 195, and 199,

27) Supreme Court Resolutions,

28) Provisions of the Code of Obligations,

29) Provisions of the Civil Code,

30) Doctrine,

31) Jurisprudence of national and international courts,

32) International Bilateral or Multilateral Conventions.

EXPLANATIONS:

1) Client plaintiff is a physician, specialized in anesthesia and reanimation, who still works in the German Hospital as an intensive care specialist.

- The client married the defendant on January 30, 2003. This is the second marriage of the plaintiff. (The ID card and marriage certificate has been submitted in the attachment.)
- The plaintiff has one child from her former marriage whereas the defendant has two children from his former marriage. (When the identity registrations are summoned to the court the date of birth, marital status, date of birth and the name of the children of the parties shall be seen).
- The client sold some of her belongings before she married, donated some of them to third parties and took the necessary belongings and started to live at

the estate of the defendant then located in Tarabya. (An estimated list of the belongings shall be submitted to Your Honor regarding this issue).

- My client gave up working in the Florence Nightingale Metropolitan Gayrettepe Hospital where she had been working since 1998 in order to establish a new life and therefore in order to find a less intensive job. (Necessary information and documents regarding quitting from the job shall be provided).

- Since my client was unable to receive her compensation from her former company, she filed a court case regarding receiving compensation for leaving the job for marrying pursuant to the Labor Law against her former company to receive her compensation with the help of an attorney proposed by the defendant. But although this court case which was filed through the help of this proposed attorney should have been won legally, the case was lost due to the fact that the attorney did not inform the client properly throughout the case and did not work in coordination with the client during the phase of providing evidence. Moreover, she also lost the contra case filed by the counterclaimant of that case because of the fact that the attorney did not cooperate with the client during the defense. (The file number and the copy of the resolution of the case whose hearing was carried out in the Labor Court will respectfully be submitted to Your Honor and the relevant court shall be called on to summon the file to Your Honor.)

As a result of the executive proceeding for debt worth 10,000 TL then to the detriment of my client who was deemed wrongful though she was rightful, again due to the fact that her lawyers did not provide for the necessary declaration of property or did not warn my client to provide a declaration of property, a new court case was filed about my client because of "not providing a declaration of property".

(The numbers of executive proceeding files and executive punishment files will be provided to Your Honor and they will be requested to be summoned.)

My client was just able to avoid imprisonment by receiving a loan for the half of the debt worth 10,000 TL and by receiving the other half in cash from the defendant.

We are providing Your Honor with such information and documenting this information in order to express that my client, just after she got married, faced some unfavorable events, which she did not deserve at all, as a result of her trust put in the defendant.

2) My client gave up her established way of living, moved to a new house, distributed her belongings, quit her job, was unable to receive the compensation from her former employer and

furthermore was forced to pay contra compensation, faced executive proceeding to her detriment for the first time in her life and faced a penalty suit.

We state once more that we are providing this beginning information to show the good faith of my client during the marriage and her desire to form a family together with the defendant and what the result of this good faith and desire was.

3) During first couple of months of the marriage with the defendant, my client continued to take part in medical operations in Levent Surgery Center, where she had gone several times before their marriage and she also began to work in another hospital as well. The period when my client did not work or was unable to work during her marriage with the defendant is no more than 6 or 7 months.

4) My client put in great effort to satisfy the requirements arisen as a result of her marriage. She cared about the children of the defendant with the compassion of a mother and she helped them solve their problems. For instance:

Melis and Mert, the children of the defendant from his former marriage did not study their lessons and my client encouraged them to study at home with the help of private teachers; she also studied together with them;

Since the children, especially Melis, were gifted in terms of drawing and painting, she insured Melis's enrolment in İstek Fine Arts High School. Melis is currently a student at an Art School in the USA.

- The other child, Mert, had an inborn intestinal illness as a result of which he was unable to hold his ordure and he used diapers even at the age of 7. For the treatment of this illness many physicians were visited with no result. However, since my client is also a physician, she contacted some of her physician friends and put in her effort for the treatment for 6 months as a result of which Mert is now able to go to the toilet properly. Mert is a healthy child now and has already gained some weight and he is now taller.
- My client also helped Melis during her treatment after her nose was broken. With the help of my client her nose was fixed through surgery and was given an aesthetic and beautiful look.
- My client also ensured that blood samples were taken from the children and were tested in Germany to see whether they have any risk of cancer, it was ensured thanks to the tests that they did not have any risk of cancer, apart from that my client personally arranged for the children to see a psychiatrist.

5) Since the defendant was frequently abroad, the plaintiff client both used to go to work to perform her profession and come home and deal with and solve the problems of children, including her own, regarding their health, their lessons and many other issues. She also used to organize the household.

6) While the plaintiff client was abroad with the defendant 6 months after they were married (June 2003) the mother and father of the plaintiff came to the house commonly owned by the parties to take care of the children of both the plaintiff and the defendant. However,

after they saw that the children of the defendant badly treated the child of my client plaintiff, they felt forced to take the client's child, Yiğit.

The children of the defendant always badly treated the child of the plaintiff, Yiğit, they always got into fights.

Yiğit was unhappy and was expressing his unhappiness to his mother the plaintiff and to his father, the former husband of the plaintiff.

The elderlies in the family of the defendant also affected the children of the defendant and caused them to behave badly towards the child of the plaintiff, Yiğit.

The elderlies in the family always advised the defendant to do whatever is needed to prevent the plaintiff and her child from getting any inheritance. Furthermore they recommended that the defendant should take necessary precautions to prevent the plaintiff and her child from getting any inheritance as a result of the legal procedures in case the defendant's plane crashes and he dies.

The defendant, following the continuous fights between his children and the child of the plaintiff initiated by his children and in accordance with the advice of the elderlies in his family about inheritance, began to express the idea that the marriage should come to an end.

Furthermore, the defendant himself continued to badly treat the child of the plaintiff and when he was going to buy some toys for his children, the child of the plaintiff also wanted to come but replied by the defendant as follows: "... your own father should buy you toys..."

7) Meanwhile the former spouse of the plaintiff filed a court case "the return of the guardianship" for the removal of the guardianship and granting the guardianship of the younger child to himself. This court case was rejected by the relevant court since the expert opinion also favored the plaintiff.

8) The plaintiff tried very hard to be a good spouse for her husband and his family as well with utmost good faith, so that their marriage could continue. She tried hard to have the return of the guardianship case rejected by the court and at the same time she took care of her patients and her hospital from a sense of humanitarian and occupational duty as a specialist physician; she also tried hard for providing peace and decorum for her child, for her new husband and his children as well as the family and relatives of her husband. This naturally tired the plaintiff to a great extent and caused damage in her psychological and biological health, nevertheless, the plaintiff always maintained her hope things would get better in the future.

The aunts and relatives of the plaintiff began to advise the plaintiff that getting a divorced was the best option and that it was impossible to continue this marriage.

9) As a result of the fact that excessive attitudes and behaviors of the defendant which excessed the limits of endurance continued, the plaintiff, one night, ran away from the house owned

commonly by the parties and told the defendant that their marriage could no longer continue. However, the defendant persuaded the plaintiff that their marriage will continue and what happened in between was just temporary and that she should have no worries about the future. After the plaintiff went back to the home where she used to live with the defendant, a new flat at the address Tarabya Sanatçılar Sitesi, B 23 D.7 was rented so that the plaintiff and her child could live there separately. New goods and furniture was purchased and the marriage continued in the new house.

10) As a result of the hasty social, familial, spatial and occupational changes in her life and the legal issues since the beginning of the marriage, the plaintiff was involved in 5-6 traffic accidents following her intensive workload and numerous family problems, during when she tried to go to work and come back home in 2006.

The plaintiff used to live a simple and tranquil life and the accidents resulted from the loss of concentration which was a result of the hasty and negative changes in her life happened after her second marriage. However, these accidents only caused material damage, no damage to the body of the plaintiff was done.

The plaintiff, with the aim of reducing the intensity of the routine of her work and her home life, made sacrifices in her occupational life and started to work in a diabetic's hospital which was calmer, had less working hours and paid less.

11) The defendant prohibited the mother, father and aunts of the plaintiff from seeing the plaintiff and he also prevented the plaintiff from going to their houses.

The defendant always swore and insulted the mother and father of the plaintiff and expressed his opinions about the child of the plaintiff as follows: ".... that great danger...., if I die, will request the money of my children...., my children and yours will not even breathe the same air....."

Of course, as a result of such abnormal expressions, attitudes and behaviors fierce fights between the plaintiff and the defendant followed.

Afterwards the attitudes and behavior of the defendant became more and more oppressive, he tried to prevent the child of the plaintiff from seeing or even hearing from his own father (including communication via telephone - or even at the school ceremonies).

As a matter of fact, in a school ceremony once, there were quarrels caused by the defendant which the teachers and administrators of the school tried hard to suppress.

The defendant always prevented the child of the plaintiff from taking part in school ceremonies if the father of the child was also to be there.

12) The defendant also began to intervene in the occupational activities of the plaintiff and prohibited her from going out later than 8 PM, from going for medical congresses, from participating in medical meetings, from seeing her colleagues who invited her for meetings (the plaintiff was only able to participate in two meetings which were in Istanbul and which were held before 6 PM. He prepared a list of behavior which openly violated the personal rights of the client and made the client sign this list. This document is in the list of evidence.

13) The plaintiff, in this intensive routine took care of her job and her husband and also tried to indulge in her hobbies, but the defendant prohibited her from seeing and working with Pınar Yeşilada, with whom the plaintiff did ceramic works together for 2.5 years. Apart from that the defendant broke many ceramics pieces, created by the plaintiff as a hobby, at times of anger.

14) In 2004 or 2005, together with the inheritance the children got from their mother (approximately 56,000 TL for each children) a house on Kemer Caunty Sedir Evleri No. 56/6 was purchased for 320.000 $ and the house belongs to the children as 1/2 each, advantage right presumably belongs to the defendant. The estimated value of the house as of 2007 according to Kemer Caunty Sales Office is 600 - 700 thousand $.

15) The defendant, who has been "RESIDENT" since 06/24/2005 (Resident is a legal term regarding entrance to, exit from, residence in and working in the United States of America, has told the plaintiff that a Green Card (Green Card is another legal status regulating entrance to, exit from, residence in and working in the United States of America) was granted to the plaintiff and her son as well but the defendant cancelled the green cards so that they could not benefit from it.

In 2007, defendant applied for a Green Card once more (on condition that no application will be made for the son of the plaintiff) as a result of the insistence of the plaintiff and the client got his Green Card in March 2011.

16) In 2005, the construction of the studio flat at Mesa Yankı Evleri A-1 Blok Daire 2 was finished and the defendant and plaintiff moved to Kemerburgaz on condition that there are still two separate houses. The estimated value of this flat as of 2007 according to MESA SALES OFFICE is between 250 - 300 thousand $. The advantage right of this flat belongs to the plaintiff, whereas the bare ownership belongs to the defendant.

17) In a document dated May 30, 2006, it is seen that a 4-story villa (seen as a piece of land due to the lack of occupancy) in Tarabya was transferred to the father of the defendant.

18) The plaintiff saw the testament of the defendant about the funds in USA entitled "Trustee" written in English.

19) The plaintiff client organized both of the houses in both Tarabya and Kemerburgaz, though the plaintiff and the defendant lived in separate houses. The client was responsible from which meal to be cooked, what kind of directives will be given to the attendant at home etc.

20) The client goes to the house of the defendant on Tuesdays and the defendant comes to the house of the plaintiff on Wednesdays. Plaintiff, in addition, goes to the defendant from Friday until Sunday.

21) On the night of 04/12/2007, the defendant battered the plaintiff by hitting the plaintiff in the face several times during the quarrel started after the insults of the defendant towards the son and family of the plaintiff. The plaintiff received a medical report the day following the insistence of her friends but she did not initiate any legal procedure. Before that, the defendant attacked the plaintiff as harsh as this one for 4-5 times.

22) The plaintiff was forced to spend the special days like religious festivals and New Year's days alone, since then the child of the plaintiff went to his father.

23) The defendant himself admitted that divorce is only possible when the spouse agrees that "he came home drunk and swore" after it took a long time for the plaintiff to divorce from her former husband.

24) The defendant took a new credit card in addition to his own for the monetary management of the household, for the other necessities of the children and expenditures of the house including food, clothing, electricity bills, telephone bills, medical expenses and other expenses; nevertheless, the defendant requested the credit card back in 2005. Although later he gave money to the plaintiff, this came to an end afterwards.

25) The plaintiff saw the defendant only on weekends after 2007 (at times when her son went to his father's). The son of the plaintiff, Yiğit, never got together with the defendant or his children except for the first 8 months of the marriage.

26) The client worked as the responsible physician of the intensive care unit at a different hospital before 2009 and then at the German Hospital where she currently works.

27) The client purchased a 80m² flat in Büyükçekmece Mimar Sinan Panorama Sitesi worth 155,000 TL, the client still pays the installments. During the time when her workplace was in economic crisis, he received a debt of 4,800 TL from the defendant to pay for the two installments of the house. Later she paid back the first half of this debt to the defendant Cem in person; the defendant Cem requested the other half with a bank receipt, but the plaintiff said that she was not going to be able to pay her debt.

28) The plaintiff, being a physician herself, suspected that the defendant has a borderline narcissist personality disorder but hoped that he was going to get better in the future and tried to continue her marriage. But the defendant, whose aggressiveness and whose inability to control his anger is at a high level, pushed the client into the pieces of glass and the client was just able to avoid hitting her head to the iron holder of the oven during a quarrel at the house at Mesa Yankı Evleri.

29) And the defendant never regretted this action.

30) The defendant decided to settle in the United States since he did not have any intention of continuing the marriage and he did not want the son of the plaintiff to benefit from his inheritance. In 2011, the defendant told the plaintiff in a conversation about the bad condition of the business that he wanted to settle in the United States and told the plaintiff client to come with him. But the plaintiff told the defendant that it would be better if they went to the States 3 years later, when the children were going to enroll in university. Nevertheless, the defendant did not listen to the plaintiff and began the preparations.

31) As a matter of fact, the defendant has a bakery company in the United States and his daughter has been studying there for 4-5 years now.

32) The defendant is financially well off. Apart from the companies he owns in Turkey, the bakery company he owns in the United States completely belongs to him. He also has rent revenues from

the estates he owns. During the time when the defendant said the client that "his business is not doing well" or "he is going to go bankrupt" he had a monthly credit card spending of 10,000 TL, the expenditures of his daughter's school in America, the expenditures of his son's private school in Turkey, riding instructor costs and his travels abroad 3-4 times a year continued.

33) The defendant also took part in a Groupama retirement system without the knowledge of the plaintiff.

34) The client tried to continue her marriage despite all the negative experiences and did sensually abide by the wishes of her husband. Accordingly, she went to the United States in August 2011 and spent 8 days with the defendant and both had a very nice time and the plaintiff's hopes of continuing the marriage were strengthened. However, when the client entered the e-mail address of the defendant in September 2011, she saw that the defendant was a member to several "dating" Internet sites and discovered that he chatted with some women online and they sent pictures to each other. Documents regarding this are among our evidences.

35) The client has sent an e-mail to the defendant stating that she was aware of what was happening and she was offended deeply and she reminded the defendant of the maltreatments she faced in the past and said that she regarded the situation as unacceptable. The defendant, in his e-mail replying to the plaintiff, stated that he admitted what he had done but there was no cheating on her and then he apologized. Documents regarding the online correspondence are attached as well.

36) The defendant did not want the plaintiff to own any estate throughout their marriage.

Due to the reasons we tried to present and explain above, the union of marriage has been deeply shattered and there is no benefit in continuing the marriage.

RESULT AND CLAIM:

The defendant is financially well off. The life he leads and his expenditures show that he has an income more than average. But, he began to transfer his belongings to the United States of America and his other family members. That's why, as a precaution, we request a non-assignment clause to be put on the company shares he owns both in Turkey and in the United States of America, his bank accounts and non-movables. Because of this, we firstly have precaution requests.

The precautions we request are listed below;

I - a- Pursuant to the Law No. 4320 on the Protection of Family, we request that preventive precautions are taken in order to prevent the defendant from hurting the client or her family.

b- By writing to the relevant Directorate of Land Registry, An annotation of "family estate" shall be put on the estate with the address Mesa Yankı Evleri, A-1 Blok D: 2.

c- All the precautions proposed by Your Honor shall be implemented.

II - Against the probability of transferring his assets;

a - We request a non-assignment clause to be put on the companies he has a share of or he owns himself according to the registrations of the Istanbul Chamber of Commerce whose registry and tax numbers are listed below.

a-1) Arı Auto Industry and Commerce Inc. Commerce Registry No. 170297 İkitelli Tax Registry No. 740050995.

a-2) Uyum Representation Commerce and Industry Collective Company Tuan Ekmekçi and His Business Partners. Commerce Registry No. 221519 Güneşli Tax Registry No. 9009860013.

a-3) In liquidation Uyum Automotive Representation Commerce and Industry Limited Company. Commerce Registry No. 332856 Halkalı Tax Registry No. 9000054917.

a-4) Eksan Automotive Marketing Commerce and Industry Inc. Commerce Registry No. 432309 Halkalı Tax Registry No. 3800167736.

b- By writing to the Directorate of Land Registry, a non-assignment clause shall be put on the non-movables registered in the name of the defendant.

c- Blocking out the current deposits, time deposits, investment account, gold, funds and currency accounts in Garanti Bankası, İş Banksı and Denizbank by writing to the general directorates.

d- Blocking out the debt receivable that the defendant could get as a result of the resolution of court case number: 2008/89 E in Sivas 1st Civil Court to the advantage of the company owned by the defendant.

e- Blocking out, determining the information about (by writing to the relevant state) and putting a non-assignment clause on all the belongings of the defendant in the USA including non-movables, company shares and bank accounts, and car.

The translated list of the documents relating his wealth is provided below;

1- Commercial insurance application.

2- Cem Ekmekçi's trust voucher.

3- Listed information about what Cem Ekmekçi's trust contains.

4- USA Ministry of Treasury Domestic Revenues Service documents about Baker Representative.

5- Commercial Registry documents of Baker Representative in USA Florida State Department.

6- Risk assurance bills of Baker company.

7- Cem Ekmekçi's checks in the Bank of America.

8- Documents providing the summary information of Cem Ekmekçi Trust.

f- Non-assignment clauses shall be put on the traffic registries of cars registered in the name of the defendant or in the name of his companies.

III- In order for the client plaintiff to lead a life of certain standard, 20,000 TL / month of ancillary relief should be granted to the plaintiff.

IV- The acquired goods shall be determined and dissolved and defendant's share in the surplus value shall rightfully be reduced or completely eliminated since the defendant is faulty and attempted against life.

V- 500,000 material indemnity and its interests for the shattering of the union of marriage as a result of the faulty behavior of the plaintiff; and 500,000 moral indemnity and its interests as a secondary result of ending the union of marriage of the client plaintiff shall be ruled.

VI- Return of the goods belonging to the plaintiff and held by the defendant whose list we provided.

VII- Divorce of the parties shall be ruled and court expenses and the fee of the attorney shall be requested from the defendant, reserving the rights to surplus.

Respectfully submitted to Your Honor, on behalf of the client.

OUR LIST OF EVIDENCE

1- Inhabitant Registries

2- Testifiers;

    2.1,    İsmail Eryiğit

        Öğretmen Evleri Mah. 906 Sok. Şenkal Sitesi A Blok D:8 Antalya.

    2.2,    Şenay Demir Wiewer, Suyolu Sokak. Entel Yeşil Vadi Sitesi A2 Blok D:15 Bahçeköy / Istanbul.

    2.3,    Yiğit Akdemir, Mesa Yankı Evleri A1 Blok D:2 Göktürk Eyüp - Istanbul.

    2.4,    Berrin Karadağ, Dilek Sok. Çiçek No. 12, D:2 Dikilitaş-Beşiktaş-Istanbul.

3- Information regarding the companies registered in the name of the defendant.

4- Tax information.

5- Social security information of the parties.

6- Doctrine view.

7- Expert analysis.

8- Pay roll of the defendant.

9- Groupama Insurance Information.

10- Sample credit card abstract of the defendant.

11- Land registry information of Kemer Country Sedir Evleri.



12- The list of behaviors the defendant forced the plaintiff to follow.

13- Battery report of the plaintiff.

14- Documents of the mutual e-mails between the plaintiff and the defendant.

15- Web page printouts showing that the defendant was a member of dating web sites.

16- Divorcement information of the defendant regarding his first marriage (Fatih 1st Civil Court. 1987-1033 E. 1987-101 K.)

17- Court and file numbers of the court cases we explained in the 1st paragrapgh of the Explanations part of our petition:

Üsküdar Labor Court 2003/149 E.

Şişli 4th Enforcement Court Pursuance File number 2003/14293

Penalty file of Şişli 4th Enforcement Determination Authority (regarding the file stated above)

18 -Documents about the traffic accident explained in the 10th paragraph of the part "explanations" in our petition of lawsuit.

19- Land registries of the non-movables owned by the defendant.

20- "Report on evaluation of the guardianship" given during the return of the guardianship case filed to the detriment of the client. (Istanbul 1st Family Court, case file number 2003/861 E.)

21- Divorce case information of the client regarding her first marriage. (Istanbul 8th Civil Court case number 1999/423 E.1999/371 K). Should be requested from the archive of Istanbul 3rd Civil Court.

22- Turkish translations of the documents showing the information regarding the wealth of defendant abroad (Explanation was made above).

23- List of goods owned by the client and held by the defendant.

24- Supreme Court resolutions.

25- All kinds of other legal evidence.

Reserving our right to provide further evidence against the evidence the defendant provides, respectfully submitted to Your Honor. 11/01/2011

Plaintiff Attorney

Attorney Şennur Pars

Annexes

1- Copy of the Procuration
2- List of evidence

